**STATE OF MARYLAND ex rel. Francis B. BURCH et al., Plaintiffs,**

v.

**Douglas M. COSTLE, Administrator, U. S. Environmental Protection Agency, et al., Defendants.**

Civ. A. No. 76–1779.

United States District Court,
District of Columbia.

April 27, 1978.

Warren K. Rich, Annapolis, Md., J. Eugene Cleary, Hyattsville, Md., Richard S. McKernon, Rockville, Md., James C. Chapin, Upper Marlboro, Md., for plaintiffs.

John E. Varnum, Dept. of Justice, Washington, D. C., for defendants.

### MEMORANDUM AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOHN LEWIS SMITH, Jr., District Judge.

This action seeks judicial review of the decision of the Administrator of the Environmental Protection Agency on August 20, 1976 to stop further processing of a grant application submitted by the Washington Suburban Sanitary Commission[1] (WSSC) for seventy-five percent federal funding of a proposed sewage treatment plant near Dickerson, Maryland, under the Federal Water Pollution Control Act 33 U.S.C. § 1251 *et seq.* The proposed sewage treatment plant, to be located approximately 20 miles up the Potomac River from the District of Columbia, was planned by the State of Maryland, the WSSC, and Montgomery County to have a sewage treatment capacity of 60 million gallons per day (mgd) and was most recently estimated to have a capital cost of over 400 million dollars, including the delivery system for transporting wastewater to the treatment plant. The complaint filed by the State of Maryland, the WSSC, Montgomery County, Maryland, and Prince George's County, Maryland alleges that EPA failed to comply with the Federal Water Pollution Control Act Amendments

---

1. The Washington Suburban Sanitary Commission is a bi-county agency formed under the laws of the State of Maryland to serve the sewerage and water supply needs of Montgomery and Prince George's Counties, Maryland.

of 1972 (FWPCA) and the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.*, in reviewing the Dickerson grant application. Plaintiffs and defendants filed cross-motions for summary judgment. The District of Columbia intervened as a party-plaintiff. Arguments by all parties were heard by the Court on October 6, 1977.

### THE ADMINISTRATOR'S DECISION

The construction of a regional sewage treatment plant in Maryland has been under consideration by Maryland, the WSSC, Montgomery County and Prince George's County officials for a number of years.

The WSSC's formal application for federal funding of 75% of the capital cost of the 60 mgd Dickerson plant proposal was submitted to EPA on March 19, 1976. On March 31, 1976 EPA's Region III office, located in Philadelphia, furnished plaintiffs with copies of its "Tentative Preliminary Document for Discussion and Comment." This document indicated that EPA had serious reservations over the proper size and the cost of the Dickerson plant proposed by the WSSC. The Maryland jurisdictions responded to EPA's preliminary analysis of the Dickerson proposal on May 14, 1976, submitting an eighty-four page response to EPA in support of the Dickerson grant application.

At the request of the Maryland jurisdictions, the Administrator agreed to decide whether a grant should be approved for the Dickerson proposal (the Regional Administrator of EPA's Region III office would normally have passed, at least initially, on the grant application). The Administrator appointed an Executive Panel, comprised of three EPA officials,[2] to review the Dickerson proposal and to recommend a course of action to him. The Executive Panel reviewed Maryland's submittals, along with EPA's previous analyses, and gave its re-

port to the Administrator on August 6, 1976. The report was sent to all interested parties, and on August 11, 1976, the Administrator held a public hearing where Maryland officials and the public expressed their views on the Dickerson proposal.

On August 20, 1976 the Administrator suspended the processing of the Dickerson grant application under the Federal Water Pollution Control Act. The Administrator did so primarily on two grounds. First, EPA's analysis of projections of the increase in population in Montgomery County and concomitant sewage treatment requirements in the County through the year 2000 indicated a need for a maximum of 35 mgd in treatment capacity beyond the County's sewage treatment allocation at the Blue Plains Treatment Plant located in the District of Columbia. The Administrator concluded that a 60-mgd treatment plant could only be justified if Montgomery County committed the plant to treatment of sewage from other jurisdictions in the metropolitan Washington region, but that no firm commitments or written agreements had been entered into by Montgomery County with any of its neighboring jurisdictions providing for use of the facility as a regional treatment plant.

Second, the Administrator found that the WSSC's application for grant funds for the 60-mgd Dickerson project did not satisfy EPA's cost-effectiveness regulations because the WSSC did not adequately analyze other possible sewage treatment methods and sites to determine whether there was an acceptable, less costly alternative to the Dickerson project. The record contains EPA's own comparison of sites which indicates that two alternatives exist that may be about $44 million and $145 million less costly, respectively, than the Dickerson proposal.

### STANDARD OF REVIEW

 It is well settled that EPA administrative decisions are reviewed under Sec-

---

**2.** The Executive Panel consisted of the Regional Administrator of EPA's Region III, who had day-to-day experience with Washington area affairs, the National Program Manager for EPA's sewage treatment plant construction program, and a Deputy Assistant Administrator in EPA's Planning and Evaluation Division, who was not involved with EPA's treatment plant grant program but had expertise in economic and program analyses.

tion 10 of the Administrative Procedure Act, 5 U.S.C. Section 706(2)(A)–(D). *Ethyl Corporation v. EPA,* 176 U.S.App.D.C. 373, 405–409, 541 F.2d 1, 33–37 (1976). The Court must determine whether the Administrator's action is invalid as in excess of legislative authority (§ 706(2)(C)), or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (§ 706(2)(A)). The Court of Appeals in *Sierra Club v. EPA,* 176 U.S.App.D.C. 335, 540 F.2d 1114 (1976), stated precisely the standard of review in this type of case:

> The "arbitrary and capricious" standard requires that agency action be affirmed if a rational basis exists therefore, it is not for us to inquire into whether the decision is wise as a matter of policy, for that is left to the discretion and developed expertise of the agency. The Supreme Court has cautioned, with respect to review under the "arbitrary and capricious" standard, that the reviewing court is limited to deciding whether there has been a "clear error of judgment * * *. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1972). See *Ethyl Corporation v. EPA, supra,* 176 U.S.App.D.C. at 406 n. 74, 541 F.2d at 34 n. 74.

> We therefore must assure ourselves that the Agency has presented a rational basis for its decision; that it "demonstrably has given reasoned consideration to the issues, and has reached a result which rationally flows from its conclusions." [176 U.S.App.D.C. 344, 540 F.2d 1123; footnotes omitted.]

See also *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). In applying that standard, the focal point for judicial review should be the administrative record already in existence, not a new record made

in the reviewing court. *FPC v. Transcontinental Gas Pipe Line Corp.,* 423 U.S. 326, 331, 96 S.Ct. 579, 46 L.Ed.2d 533 (1976); *Camp v. Pitts,* 411 U.S. 138, 141, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

## RESOLUTION OF PLAINTIFFS' CLAIMS

The reasons for the Administrator's determination are clearly explained in his August 20, 1976 decision and are adequately documented in the record. Plaintiffs challenge both grounds relied upon by the Administrator in making his decision on the grant application.

(1) *Plant Capacity, Given Projected Sewage Flows in Montgomery County*

■ The Administrator found in his August 20 decision that a 60 mgd treatment facility could not be justified by Montgomery County's treatment needs alone through the year 2000. Plaintiffs challenge the Administrator's review of the population projections and sewage treatment needs for Montgomery County, asserting that he employed improper assumptions in evaluating the data and, thus, reached an unjustifiably low estimate of the proper size of the proposed treatment facility. The evaluation of both calculations is complex and requires a substantial degree of judgment. Where an agency has exercised its judgment in interpreting a set of facts under an act over which it is charged to administer, the Court should grant that exercise of judgment deference and may not substitute its judgment for that of the agency. *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978); *Kleppe v. Sierra Club,* 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976); *Train v. NRDC,* 421 U.S. 60, 87, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975).

■ The Court finds that the Administrator had a rational basis for determining that without executed agreements making the Dickerson plant a regional treatment plant,[3] only a 35-mgd plant is justified by

3. EPA's grant regulations require that commitments of capacity in a regional facility must be

formal. 40 C.F.R. 35.917–6. Letters from the District of Columbia dated May 24, 1976, and

Montgomery County's treatment needs alone for the next twenty years. There is substantial documentation in EPA's administrative record (see Document Nos. 1, 5, 7, 204, 238, 325, and 327) of the procedures EPA employed in completing its analysis. The Court finds that the Administrator considered all relevant factors and had an adequate basis in the administrative record for his decision to suspend further processing of the grant application on this ground.

■ Plaintiffs also contend that the Administrator's evaluation of projected sewage treatment needs in Montgomery County was arbitrary and capricious because EPA was required to accept the WSSC's sewage flow projections supporting a 60-mgd Dickerson plant. However, Section 204(a)(5) of the FWPCA, 33 U.S.C. § 1284(a)(5), specifically requires the Administrator to make a determination prior to awarding grant assistance that the size and capacity of the proposed treatment plant relate directly to the needs to be served by the plant. This challenge to the Administrator's decision must fail.

### (2) The WSSC's Failure to Comply With EPA's Cost-Effectiveness Regulations

The Administrator's suspension of further processing of the Dickerson grant application was also based on his determination that the grant application did not satisfy the requirements of EPA's cost-effectiveness regulations, found at 40 C.F.R. §§ 35.925 and 35.925–7 and Appendix A, "Cost-Effectiveness Analysis Guidelines." EPA's regulations require that a cost-effective analysis be prepared by the applicant to accompany the grant application. The Administrator found in his decision (p. 5) that the WSSC failed to analyze at least two potential alternatives which appeared to be considerably less expensive than the WSSC's Dickerson proposal. In a separate section of his decision, the Administrator provided suggestions on alternatives to the 60 mgd Dickerson proposal, including a modified version of the Dickerson proposal, a plant at a different location, and several small plants (including land treatment facilities), which should be evaluated in accordance with EPA's Cost Effectiveness Guidelines.

Plaintiffs challenge the Administrator's finding that the WSSC's cost-effectiveness analysis was inadequate and allege that the Administrator's inclusion of the alternative of construction of a treatment plant near the Piscataway sewage treatment plant in Prince George's County, Maryland in his cost-comparison is arbitrary and capricious. Plaintiffs contend that it is not a "feasible alternative" treatment facility within the meaning of Paragraph e of the Cost-Effectiveness Guidelines,[4] because of political opposition in Prince George's County, Maryland to construction of other sewage treatment plants in the county.

■ The Administrator concluded in his August 20, 1976 decision that construction of a treatment plant at Piscataway is a "feasible" alternative to the Dickerson plant proposal and that the political opposition of Prince George's County is a "non-monetary factor" which should be accounted for descriptively in the analysis after the

---

from Fairfax County, Virginia, dated August 12, 1976, indicated that no formal commitments would be made. The Administrator correctly concluded on August 20, 1976 that no agreements from the District of Columbia or Fairfax County had been reached for treatment of regional sewage flows at the proposed Dickerson plant.

**4.** Paragraph e of the Guidelines sets forth procedures for identification, selection, and screening of alternatives to be cost-compared:

(1) *Identification of alternatives.* All feasible alternative waste management systems shall be initially identified.

\* \* \* \* \* \*

(2) *Screening of alternatives.* The identified alternatives shall be systematically screened to define those capable of meeting the applicable Federal, State, and local criteria.

(3) *Selection of alternatives.* The screened alternatives shall be initially analyzed to determine which systems have cost-effective potential and which should be fully evaluated according to the cost-effectiveness analysis procedures established in these guidelines.

cost comparisons are completed in accordance with paragraph f(1) of the Cost-Effectiveness Guidelines:

> Non-monetary factors (e. g., social and environmental) shall be accounted for descriptively in the analysis in order to determine their significance and impact.

The Court finds that the Administrator did not act in an arbitrary or capricious manner in finding the WSSC's cost-effectiveness analysis accompanying the Dickerson grant application was incomplete because it did not include, for cost-comparison purposes, feasible alternatives which were less costly than the 60-mgd Dickerson proposal. EPA's regulations do not require that the most cost-effective alternative necessarily be selected, but only that all the feasible alternatives be studied and cost-compared before the applicant chooses a treatment method and site. The complex, technical nature of these grant applications compels the Court to recognize the expertise of the agency entrusted with the responsibility of determining whether a proposed treatment system is cost-effective. The Court will not substitute its judgment for that of the Administrator here.

Plaintiffs further contend that the Administrator is estopped from denying the WSSC's grant application and from requiring inclusion of a Piscataway plant alternative to be included in the cost-effective analysis accompanying the Dickerson grant application. The Court finds plaintiffs' invocation of the doctrine of estoppel here to be without merit. *U. S. Immigration Service v. Hibi,* 414 U.S. 5, 8, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973); *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

■ Assuming, *arguendo,* that the doctrine of estoppel may properly be applied here against the Administrator, plaintiffs have presented facts which are insufficient to invoke the doctrine. See *City of New Haven v. Train,* 424 F.Supp. 648, 655 (D.Conn., 1976). Plaintiffs knew from the outset that whether they chose the Dickerson site or another site, they would have to comply with the FWPCA and EPA's grant

regulations before EPA could give them a construction grant. The State of Maryland, the WSSC, and the Counties are experienced in governmental functions and know that EPA is bound by the FWPCA and its regulations, just as the plaintiffs are, in the administration of the construction grant program. See *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). In addition, the application of the doctrine of estoppel here is inappropriate because, as soon as new facts became known which affected the Dickerson proposal in October 1975—i. e., the lower population projections for Montgomery County, coupled with higher estimates of the required construction costs—EPA openly reevaluated the WSSC's 60 mgd Dickerson proposal. Maryland, Montgomery County, and the WSSC participated at every step in the evaluation process. They were never ignorant of the true facts or relied on EPA's conduct to their injury. In sum, the doctrine of estoppel is simply not applicable here.

■ Finally, plaintiffs allege that the Administrator violated the provisions of the National Environmental Policy Act, 42 U.S.C. § 4332, by not completing an environmental impact statement on the Dickerson grant application before he made his August 20, 1976 decision suspending further processing of the WSSC's grant application. Plaintiffs' assertion is legally groundless. Section 511(c)(1) of the Federal Water Pollution Control Act, 33 U.S.C. § 1371(c)(1), states that only the *provision* of funds for the construction of treatment works is subject to NEPA:

> Except for the *provision* of Federal financial assistance for the purpose of assisting the construction of publicly owned treatment works as authorized by Section 201 of this Act, . . . no action of the Administrator taken pursuant to this Act shall be deemed a major Federal action significantly affecting the quality of the human environment within the meaning of the National Environmental Policy Act of 1969. [Emphasis added.]

Section 511(c)(1) refers to an *action* of the Administrator and clearly establishes that

the decision to fund, not the evaluation of a possible grant award, is the act which must satisfy NEPA requirements. Here, the Administrator made no proposal for federal action (as would have occurred if the application had been processed and the grant awarded), but merely stated that EPA would not process the application until Maryland revised the grant application and satisfied EPA's reservations concerning the proposed Dickerson project. The Administrator's decision that no federal action be taken on the grant proposal did not trigger the NEPA requirements. *Kleppe v. Sierra Club*, 427 U.S. 390, 405–406, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976). The Court finds that the Administrator did not err in staying completion of the environmental impact statement when the processing of the Dickerson grant application was suspended.

. Accordingly, it is

Ordered and adjudged that:

1. The motion of defendants for summary judgment be and the same is hereby granted, and

2. The motion of plaintiffs for summary judgment be and the same is hereby denied.