Edward E. SIMONS, et al.,
Plaintiffs-Appellants,

v.

Anne M. GORSUCH, Administrator of Environmental Protection Agency of the U.S.A., et al., Defendants-Appellees.

Nos. 82–2634, 83–1072.

United States Court of Appeals,
Seventh Circuit.

Argued May 11, 1983.

Decided Aug. 30, 1983.

Daniel F. Snyder, Debardeleben & Snyder, Park Falls, Wis., for plaintiffs-appellants.

Michael E. Perino, Mulcahy & Wherry, S.C., Madison, Wis., Robert L. Klarquist, Dept. of Justice, Washington, D.C., Walter Kuhlmann, Boardman Suhr, Curry & Field, Madison, Wis., for defendants-appellees.

Before CUDAHY and POSNER, Circuit Judges, and ROSENN, Senior Circuit Judge.*

CUDAHY, Circuit Judge.

This is an appeal of a summary judgment in favor of the defendants in an action for declaratory and injunctive relief against the construction of a sewage treatment facility in the vicinity of land owned by the plaintiffs-appellants. That appeal has been consolidated with an appeal from a denial of the appellants' motion to vacate judgment for fraud and misrepresentation, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. On appeal, the appellants argue that the district court incorrectly determined as a matter of law that no environmental impact statement was required and wrongly decided that the appellants were not entitled to special notice of a public hearing. Further, appellants contend that the district court abused its discretion in denying the appellants' 60(b) motion. We affirm.

I

This action stems from a decision of the City of Hayward, Wisconsin, to construct a new sewage treatment plant using funds received under a grant from the federal government pursuant to section 201 of the Clean Water Act. 33 U.S.C.A. § 1281 (Supp.1982). In 1977 the Environmental Protection Agency (the "EPA") awarded a grant, under section 201, to the City of Hayward for development of a facilities plan analyzing the City's waste water treatment needs. Later, in 1979, the City conducted a public hearing on the draft version of the facilities plan. Notice of the hearing was published in local newspapers and mailed to various organizations. No adverse comments were received at the hearing. The Wisconsin Department of Natural Resources (the "WDNR"), under a delegation agreement with the EPA, reviewed the plan and ordered further study to be done by a private engineering firm. After reviewing the findings of the study, the WDNR concluded that the sewage treatment facility would not have a significant impact upon the environment and forwarded that conclusion to the EPA, which then performed a review of the project pursuant to applicable federal regulations. That review also concluded that the project would not have a significant impact on the human environment.[1] In 1980, the EPA awarded the City of Hayward a grant under section 201 of the Clean Water Act to construct the treatment facility. No environmental impact statement ("EIS") was prepared or issued by the EPA. Construction on the new facility was completed by February 1982.

The City of Hayward owns the property upon which the treatment facility has been constructed. Pursuant to Sawyer County zoning ordinances, the property could be used for waste disposal facilities provided that a conditional use permit was obtained

---

* The Honorable Max Rosenn, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, is sitting by designation.

1. The EPA review involved an evaluation of the probable impact of the project on the environment, alternatives, the relationship between local short-term uses of environment and the maintenance and enhancement of long-term productivity, irreversible or irretrievable commitment of resources, and any public objections to the project.

from the county zoning committee. The applicable county ordinances require that a public hearing be held prior to issuance of the permit. Those ordinances also contain the following notice requirements:

> [notice must be] mailed to the owners of all lands within 300 feet of any part of the land included in such proposed conditional use at least ten (10) days before such Public Hearing. The failure of such notice to reach any property owner shall not invalidate any . . . approval of a conditional use.

The appellants own property which is separated from the site of the new treatment plant by a United States highway (150 feet wide), a railroad track (133 feet wide) and a town road (either 66 feet or 49.5 feet wide).[2] The property of appellants Edward and Ginny Simons is described as follows:

> The East One Thousand (1,000) feet of the Northeast Quarter (NE ¼) of Section One (1), Township Forty (40) North, Range Ten (10) West excepting therefrom South Six Hundred Sixty (660) feet thereof and *excepting therefrom the existing highway and railroad right-of-ways.* (emphasis supplied)

Appellants Robert and Arlene Simons own property of the following description:

> The West One Thousand (1,000) feet of the East Two Thousand (2,000) feet of the Northeast Quarter (NE ¼) of Section One (1), Township Forty (40) North, Range Ten (10) West, and the East One Thousand (1,000) feet of the South Six Hundred Sixty (660) feet of the Northeast Quarter (NE ¼) of Section One (1), Township Forty (40) North, Range Ten (10) West, *excepting therefrom the existing highway and railroad right-of-ways.* (emphasis supplied)

In 1981, the appellants filed suit in the district court for the Western District of Wisconsin. They argued that an EIS for the treatment plant was required *as a matter of law* and sought a declaration that the federal defendants violated the National Environmental Policy Act ("NEPA") by failing to prepare an EIS. The plaintiffs sought a permanent injunction prohibiting the construction and operation of the facility. Appellants also asked for a declaration that the local governmental defendants violated their rights under the Fifth, Ninth and Fourteenth Amendments because the plaintiffs were improperly denied notices of the public hearing as required by local ordinance. Based on this alleged violation of their constitutional rights, appellants sought damages under 42 U.S.C. § 1983 and a permanent injunction against the local governmental defendants prohibiting construction or operation of the facility. The defendants included the Administrator of the Environmental Protection Agency (the "EPA"), the chief of the United States Army Corps of Engineers, the City of Hayward, Sawyer County, several local officials, an engineering company and two construction companies.[3] The plaintiffs moved for summary judgment and the defendants responded with cross-motions for like relief. In August 1982, the district court granted summary judgment in favor of the defendants and the plaintiffs appealed.

Subsequently, the appellants moved to vacate the judgment, pursuant to Rule 60(b), Fed.R.Civ.P., upon the grounds that the defendants had misrepresented to the court that an adequate environmental assessment had been performed, that the defendants would take all steps necessary for the protection of the environment and that the new treatment plant was operating properly. The district court dismissed that motion for lack of jurisdiction, but also, in the alternative, denied the motion on the merits because plaintiffs' arguments did not address the grounds upon which the case had been decided.

## II

■ We first address the question whether an EIS was required here. The point of

---

**2.** The Sawyer County surveyor was apparently unable to definitively establish the width of this road.

**3.** The businesses and associated individuals named as defendants were apparently in the lawsuit solely for the purpose of making it possible to secure injunctive relief.

departure for this inquiry is NEPA, which provides, in pertinent part:

> [A]ll agencies of the Federal Government shall
>
> \* \* \* \* \* \*
>
> (c) include in every recommendation or report or proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on
>
> (i) the environmental impact of the proposed action.

42 U.S.C. § 4332.

Thus, the key to determining the need for an EIS is whether the proposed undertaking is a "major Federal action[ ] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). In this connection, section 511 of the Federal Water Pollution Control Act addresses the question of which waste water management actions are to be deemed "major Federal action[s]." 33 U.S.C. § 1371(c). That statute provides, in pertinent part:

> (c) Action of Administrator deemed major Federal action; construction of National Environmental Policy Act of 1969
>
> (1) Except for the provision of Federal financial assistance for the purpose of assisting the construction of publicly owned treatment works as authorized by section 1281 of this title, and the issuance of a permit under section 1342 of this title for the discharge of any pollutant by a new source as defined in section 1316 of this title, no action of the Administrator taken pursuant to this chapter shall be deemed a major Federal action significantly affecting the quality of the human environment within the meaning of the National Environmental Policy Act of 1969 (83 Stat. 852);

33 U.S.C. § 1371(c).

The appellants argue, based upon these two sections, that, since the Hayward project is federally funded (thus falling within 33 U.S.C. § 1371(c)), an EIS is required as a matter of law because such a statement is required for *all* publicly owned treatment works projects for which Federal financial assistance is provided.

In addressing this contention, we note that ordinarily under NEPA, an agency's determination that "an environmental impact statement need not be filed must stand unless it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Assure Competitive Transportation, Inc. v. United States,* 635 F.2d 1301, 1308 (7th Cir.1980). We must therefore determine whether section 1371 eliminates this discretion and requires preparation of an EIS in certain described cases.[4]

We know of no case which supports the statutory interpretation espoused by the appellants. *Kilroy v. Quarles,* 614 F.2d 225 (9th Cir.1980), which the plaintiffs cite, states that, although some permits are exempt from the "usual EIS requirement, . . . grants of federal funds by the EPA to help finance projects made necessary by permits are not." *Id.* at 227. This language, however, merely says that projects using federal funds are not *exempt* from the EIS requirement. It does not provide that *all* federally funded facilities *require* an EIS. *See also Pacific Legal Foundation v. Quarles,* 440 F.Supp. 316 (D.C.Cal.1977) (involving the same waste treatment project as *Kilroy;* both *Quarles* and *Kilroy* involve a class of federal action which is specifically exempted by section 1371(c) from the EIS requirements of NEPA). Similarly, *Burch v. Costle,* 452 F.Supp. 1154 (D.D.C.1978) provides only that projects funded by grants are subject to NEPA. *Id.* at 1159–60. This interpretation merely arms the agency with discretion to determine whether federally funded projects are major federal actions significantly affecting the quality of the human environment. 42 U.S.C. § 4332.

The legislative history of section 1371 also makes clear that the purpose of the section is to exclude from the NEPA re-

---

4. The district court explicitly noted that the plaintiffs did not argue that the EPA had abused its discretion in deciding not to prepare an EIS. Rather, the plaintiffs chose to argue simply that an EIS was required to be prepared as a matter of law.

quirement all but two categories of actions; the purpose is not to *require* an EIS for these two excepted categories. Conference Report 92–1236, 92d Cong.2d Sess., *reprinted in* 1972 U.S.CODE CONG. & ADMIN.NEWS, 3668, 3776, 3826. Appellants' interpretation of section 1371 demands a strained reading of the statutory language, which would strip the EPA of substantial discretion. There is no reason to believe that Congress, in excluding most EPA actions from an EIS requirement, intended to include others as a matter of law. Hence, the district court was correct in concluding that section 1371 does not require as a matter of law an EIS here.

We must also consider whether the district court erred in determining that the plaintiffs were not entitled to a mailed notification of the hearings held by the City of Hayward. This holding was premised upon a finding of fact that the appellants' property was more than 300 feet from the border of the plant site, and, therefore, fell outside the area within which special notice was required by the Sawyer County ordinance.

Appellants argue first that a factual dispute exists, based on Edward Simons' statement in an affidavit that his land "adjoin[ed]" the City's land, and that summary judgment was thus inappropriate. But Simons' statement is simply not sufficient to create any factual dispute. The map produced by the Sawyer County Surveyor is both clear and uncontested. The map demonstrates that, at the closest point between the appellants' property and the City's property, the distance is either 332.30 feet or 348.80 feet.[5]

■ The appellants argue next that, under Wisconsin law, they own the land up to the center of the town road adjacent to their property, thereby bringing their property within the 300 feet perimeter and entitling them to a mailed notification of the

hearing. The Wisconsin rule is that the owner of adjacent land "holds legal title to the land to the center of the adjacent street or highway, in the absence of a clear intent to the contrary." *Rikkers v. Ryan,* 76 Wis.2d 185, 251 N.W.2d 25, 27 (1977) (*citing Grunwaldt v. Milwaukee,* 35 Wis.2d 530, 151 N.W.2d 24 (1967)). But in this case, the final phase of the Simonses' legal descriptions destroys their claim. That phrase, in the case of both parcels, reads: "excepting therefrom the existing highway and railroad right-of-ways." This phrase excludes the highway and railroad rights of way from the property owned by the appellants. Therefore, we approve the district court's determination that appellants were not improperly denied notice of the public hearings.[6]

■ Finally, we turn to the Simonses' motion to vacate the judgment below for fraud and misrepresentation, as provided in Rule 60(b)(3), Fed.R.Civ.P. We first note that the district court denied the appellants' motion on the ground that it lacked jurisdiction pending direct appeal from the judgment, and alternatively, on the merits. The district court was incorrect as to its jurisdiction to consider the Rule 60(b) motion. We have held that a district court has jurisdiction to consider and *deny* Rule 60(b) motions during the pendency of an appeal, *Textile Banking Co., Inc. v. Rentschler,* 657 F.2d 844 (7th Cir.1981). A remand is unnecessary, however, because the district court also addressed the merits of the motion.

■ The plaintiffs' motion was based upon materials which purportedly demonstrated that the appellees had misrepresented to the district court that their environmental assessment had been adequate, that they had taken all necessary steps for the protection of the environment and the public health and that the new treatment plant

---

5. We do note the discrepancy in the record regarding the width of the town road. *See* n. 1 *supra.* The record indicates that the width could be either 66 feet or 46½ feet. The widths of the remaining rights of way are undisputed.

6. Appellants also argue that in addition to their right of notice based upon the Sawyer County Ordinance, they had an independent right to be specially notified of the hearing based on the equal protection and due process clauses of the Fourteenth Amendment. We find no merit in these arguments.

was operating properly. The district court denied the motion on the alternative ground that "nothing in [the] allegations of wrongdoing goes to the grounds upon which the case was decided." Our role in reviewing the denial of the 60(b) motion is to determine whether the district court abused its discretion. *Smith v. Widman Trucking & Excavating,* 627 F.2d 792, 795–96 (7th Cir. 1980); 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2857 (West 1973). Abuse of discretion in this context "is established only where no reasonable man could agree with the district court; if reasonable men could disagree as to the propriety of the court's action, no abuse of discretion has been shown." *Smith,* at 795–96.

 The district court was within its discretion in finding that the appellants did not make the showing required by Rule 60(b) to set aside a judgment. The materials presented in support of the motion are essentially irrelevant to the legal issues upon which the case turned. The appellants argued that an EIS was required as a matter of law, not that the factfinding procedure followed by the appellees had in some way been inadequate. Thus, the materials presented in no way affect the legal conclusion that an EIS was not required as a matter of law under 33 U.S.C. § 1371(c). Further, even if we were to interpret appellants' 60(b) motion as being based upon a theory that the appellees' behavior was so fraudulent that equity requires the judgment to be set aside, we do not think that the district court abused its discretion. The burden of establishing fraud or misrepresentation is upon the moving party and must be established by clear and convincing evidence. *DiVito v. Fidelity and Deposit Co. of Maryland,* 361 F.2d 936, 939 (7th Cir.1966); 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2860 (West 1973). Our review of the record does not reveal such clear and convincing evidence. We therefore approve the action of the district court in denying the motion.

### III

The judgment is therefore AFFIRMED.