Brian **VUKADINOVICH**, Appellant,

v.

Richard **ZENTZ**, Ronald Kurmis, John Ross, William Collins, and City of Valparaiso, Appellees.

No. 92–2957.

United States Court of Appeals, Seventh Circuit.

Submitted April 2, 1993.

Decided June 9, 1993.

---

Brian Vukadinovich, Wheatfield, IN (submitted for appellant pro se).

William W. Kurnik (submitted), Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, IL, for defendants-appellees.

Before POSNER and EASTERBROOK, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

TIMBERS, Senior Circuit Judge.

Appellant Brian Vukadinovich appeals from a judgment entered on a jury verdict in the Northern District of Indiana, James T. Moody, *District Judge*, finding in favor of appellees, City of Valparaiso, and several of its police officers, in a civil rights action commenced by Vukadinovich pursuant to 42 U.S.C. § 1983 (1988).

On appeal, Vukadinovich asserts that numerous errors committed by the court during his trial warrant a reversal of the judgment and a new trial.

For the reasons that follow, we reject Vukadinovich's claims and we affirm the judgment in all respects.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

This appeal arises from a lengthy history of disputes between Vukadinovich and the

* The Honorable William H. Timbers, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

Valparaiso, Indiana, (City) police department. The troubles began in September 1981 when Vukadinovich was arrested for disorderly conduct by Valparaiso police officers William Collins and Cosmo Hernandez. At his trial, Vukadinovich was found not guilty. He then commenced an action against the officers in the state court, alleging false arrest and excessive use of force. The case was settled before trial. In March 1983, Collins again arrested Vukadinovich. After the charges were dismissed, Vukadinovich commenced another action against Collins, alleging excessive use of force. This case also was settled before trial. On September 26, 1984, Vukadinovich filed a complaint with Valparaiso Police Chief Richard Buchanan, claiming that he was being harassed by Valparaiso police officers. Buchanan assigned an officer to investigate the allegations. When the officer concluded that the claim was unfounded, the complaint was dismissed.

On October 15, 1986, Officer Richard Zentz pulled Vukadinovich over for driving without his headlights on after dusk. A standard computer check of Vukadinovich's date of birth and social security number revealed that his driver's license had been suspended because of his numerous traffic violations. Zentz arrested Vukadinovich for driving with a suspended license and took him into custody. Vukadinovich recorded on tape the conversation that occurred during this arrest. The charge against Vukadinovich eventually was dismissed.

On November 3, 1986, while on patrol, Zentz observed a truck speeding. Although he did not have a radar device, Zentz was able to estimate the truck's speed based on his pursuit of it. Zentz pulled the truck over. He approached the truck to issue a citation and recognized Vukadinovich as the driver. Vukadinovich remarked that he was not going to stick around, restarted the truck, and pulled away. Zentz returned to his patrol car and summoned assistance. Officers Ronald Kurmis and John Ross answered the call. They followed Vukadinovich to his residence

where, despite his forceful resistance, they handcuffed him and put him in a patrol car. Vukadinovich was taken to the police station where he was charged with speeding, fleeing, resisting arrest, and battery. The arrest report was reviewed and signed by Officer Collins.

When Vukadinovich arrived at the police station on this occasion, he began complaining of pains and was taken to a hospital. Upon returning from the hospital, Vukadinovich claimed that Officer Zentz had gone through his personal belongings and had stolen $500 from his wallet. An employee responsible for inventorying and safekeeping prisoners' property testified, however, that there was no money in Vukadinovich's wallet when he arrived at the police station. The charges arising from this arrest eventually were dismissed.

To review and investigate citizen complaints against its police officers, the City has an internal review board comprised of officers. The City also has a Board of Works to handle disciplinary actions brought against its officers. Harassment complaints, however, are not reviewed immediately by any board. Instead, they are investigated by an officer who determines whether there is sufficient cause to investigate further.

On October 6, 1988, Vukadinovich commenced the instant § 1983 action against officers Zentz, Kurmis, Ross, Collins, Hernandez, and Wheatfield, Indiana police officer Paul Westmoreland. Vukadinovich also named the City as a defendant. Vukadinovich alleged that the officers conspired to deprive him of his constitutional rights, in retaliation for his two actions against Officer Collins. Vukadinovich further alleged that his civil rights were violated during his arrests on October 15 and November 3 and by Officer Zentz's alleged theft of $500 from his wallet while he was in custody following the November 3 arrest. Vukadinovich maintained that the City was aware of its officers' campaign of harassment, yet did nothing to prevent it.

On December 8, 1989, the court entered summary judgment in favor of officers Hernandez and Westmoreland on the ground that there was insufficient evidence to estab-

lish that either violated or entered into a conspiracy to violate Vukadinovich's constitutional rights. A jury trial began on March 11, 1991 at which Vukadinovich proceeded *pro se*. At the close of Vukadinovich's case, appellees moved for a directed verdict. The court denied this motion. Appellees renewed their motion for a directed verdict at the close of all the evidence. The court granted this motion in part, finding that (1) there was probable cause to arrest Vukadinovich on November 3, 1986; (2) there was insufficient evidence to establish that Zentz took or had access to the $500 alleged to have been stolen; (3) there was no evidence establishing a custom or practice by the City of tolerating deprivations of Vukadinovich's rights; and (4) the evidence was insufficient to link Officer Collins to the conspiracy. On March 18, 1991, the jury returned a verdict in favor of appellees on the remaining claims. All parties filed post-trial motions. In an order dated June 29, 1992, the court denied all of these motions.

On appeal, Vukadinovich seeks reversal of the judgment entered on the jury's verdict and a new trial on the ground that the court committed numerous errors during his trial.

## II.

First, Vukadinovich contends that the court improperly excluded from evidence at trial the audiotape recording of his October 15 arrest. Since a court has broad discretion in deciding whether to admit tape recordings, we will overturn its decision only in extraordinary circumstances. *United States v. Jewel*, 947 F.2d 224, 228 (7th Cir. 1991). Further, where the recording contains inaudible or unintelligible portions, the decision whether to admit it in evidence is committed to the sound discretion of the trial court. *United States v. Zambrana*, 841 F.2d 1320, 1337 (7th Cir.1988). Here, Vukadinovich concedes that the tape is partially inaudible. Moreover, he has not convinced us that there were extraordinary circumstances to support its admission. We hold that the court did not abuse its discretion in excluding the tape.

■ While Vukadinovich correctly states that the parties included the tape recording in the pretrial order and that appellees failed to object to its inclusion as required by Local Rule 21(f)(6), the court's decision to exclude the tapes at trial nevertheless was proper. Indeed, we are reluctant to "interfere with the trial court's determination not to hold the appellee[s] to the pretrial order unless there was a clear abuse of discretion or manifest injustice". *Sadowski v. Bombardier, Ltd.*, 539 F.2d 615, 621 (7th Cir.1976); *see also* Fed.R.Civ.P. 16(e). While the instant case is somewhat unique since it involves the exclusion of a document listed in a pretrial order rather than the usual situation involving the introduction of an unlisted document, we perceive no injustice resulting from our reluctance to interfere with the court's decision to alter the pretrial order.

To determine whether the court abused its discretion in departing from its pretrial order, we examine the following factors: (1) prejudice to the opposing party; (2) ability of the opposing party to cure the effects of any prejudice; (3) disruption of the orderly and efficient trial of the case; and (4) bad faith in the party's failure to adhere to the pretrial order. *Smith v. Rowe*, 761 F.2d 360, 365 (7th Cir.1985). Here, Vukadinovich claims that he was prejudiced because appellees' late objection prevented him from calling linguistic experts to analyze the tape. However, since the court determined that the tape was inaudible, its exclusion did not prejudice Vukadinovich. *United States v. Vega*, 860 F.2d 779, 790 (7th Cir.1988) (tape inadmissible where "unintelligible portions are so substantial as to render the recording as a whole untrustworthy") (citation omitted). Further, to admit both the tape and expert testimony would have disrupted the efficient trial of the case. Finally, there is no evidence of bad faith on the part of defense counsel in not adhering to the pretrial order. Accordingly, since Vukadinovich does not satisfy the factors set forth in *Smith, supra,* and since, even if the tape was improperly excluded, he cannot demonstrate that it was more than harmless error, Fed.R.Evid. 103, we hold that the court did not abuse its discretion in departing from its pretrial order.

■ Second, Vukadinovich contends that the court erred in allowing appellees to use unsigned depositions at trial, in violation of Fed.R.Civ.P. 30(e). Vukadinovich, however, fails to recognize that the use of unsigned depositions at trial constitutes harmless error unless he can show that there were particular inaccuracies in the depositions or that he was prejudiced by their use at trial. *United States v. Campbell*, 845 F.2d 1374, 1379 (6th Cir.), *cert. denied*, 488 U.S. 908 (1988). Here, Vukadinovich has failed to show what inaccuracies, if any, appeared in the depositions. He also has failed to show how the use of the depositions prejudiced him. Although it may be said that the court improperly admitted unsigned depositions, doing so constituted at worst harmless error.

■ Third, Vukadinovich contends that the court erred in denying his post-trial Fed.R.Civ.P. 60(b) motion to vacate the judgment and impose sanctions on the City for withholding evidence in violation of a court order. In particular, Vukadinovich asserts that the City did not comply with the court's order to submit for *in camera* inspection the officers' personnel files. Under Rule 60(b), a court is permitted to grant relief only in "exceptional circumstances". *United States v. One 1979 Rolls–Royce*, 770 F.2d 713, 716 (7th Cir. 1985). Further, a decision not to grant a Rule 60(b) motion will be reversed only where the court abused its discretion. *Simmons v. Gorsuch*, 715 F.2d 1248, 1253 (7th Cir.1983). To prevail, Vukadinovich bears the burden of showing that the City wrongly withheld evidence, *id.,* and that the evidence probably would have produced a different result at trial. *Bradley Bank v. Hartford Accident & Indem. Co.*, 737 F.2d 657, 662 (7th Cir.1984). Here, Vukadinovich failed to adduce any evidence that the City deliberately or wrongfully withheld evidence. Moreover, Vukadinovich has not shown that the evidence allegedly withheld would have produced a different result at his trial. Indeed, the information sought by Vukadinovich pertained to the City's liability which, since the jury found for the individual officers, is irrelevant. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (damages not

available against municipality where jury has concluded that its officers inflicted no constitutional harm); *Tom v. Voida*, 963 F.2d 952, 962 (7th Cir.1992) (same). We hold that the court did not abuse its discretion in denying Vukadinovich's Rule 60(b) motion.

Fourth, Vukadinovich contends that the court erred in failing to instruct the jury to disregard its previous rulings that dismissal of the charges against Vukadinovich arising from his October and November arrests were irrelevant. This claim clearly lacks merit. Vukadinovich never requested that the court instruct the jury to disregard its prior rulings. In view of Vukadinovich's failure to object at trial, we need not consider this claim on appeal. Further, even if we were to consider this claim, the court corrected itself by allowing a stipulation to be entered in evidence stating that the criminal proceedings arising from both arrests had been dismissed. We hold that the court properly informed the jury that the court's prior rulings were to be disregarded.

■ Fifth, Vukadinovich contends that the court erred in entering a directed verdict on the ground that Officer Zentz had probable cause to arrest him on November 3, 1986. We disagree. Since Zentz followed Vukadinovich for several seconds in a patrol car with a calibrated speedometer, no reasonable jury could conclude that he "guessed" at Vukadinovich's speed. Zentz also was aware that, when he arrested Vukadinovich two weeks earlier, he had been driving with a suspended license. Further, Vukadinovich's flight from the scene and forceful resistance at his subsequent arrest gave Zentz probable cause to arrest him on November 3. We hold that the court properly concluded that no reasonable juror could find Vukadinovich's November arrest unconstitutional. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

■ Sixth, Vukadinovich contends that the court erred in directing a verdict on his due process claim against Officer Zentz for allegedly removing money from his wallet while he was in custody. This claim lacks merit. There is no evidence from which a jury reasonably could conclude that Zentz removed $500 from Vukadinovich's wallet. The wallet

was inventoried and kept in safekeeping by jail employees. These employees testified that there was no money in Vukadinovich's wallet when he was brought to the jail and that no outside parties had access to his wallet. Indeed, the fact that Zentz may have had access to the wallet when he put a ticket in with Vukadinovich's personal belongings is merely a "scintilla" of evidence which is insufficient to defeat a motion for directed verdict. *Anderson, supra*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 448 (1872)). Moreover, even if Zentz had stolen the money, it was the type of random and unauthorized act that does not violate due process since adequate post-judicial remedies were available to Vukadinovich. *Hudson v. Palmer*, 468 U.S. 517, 533–34 (1984). Specifically, Vukadinovich could have asserted a state law claim for conversion. *Yoder Feed Serv. v. Allied Pullets, Inc.*, 171 Ind.App. 692, 359 N.E.2d 602 (1977). We hold that the court properly directed a verdict for Zentz on Vukadinovich's due process claim.

■ Seventh, Vukadinovich contends that the court erred in directing a verdict for the City. He fails to recognize, however, that since the City's § 1983 liability is derivative, it cannot be held liable where, as here, a jury returns a verdict in favor of its police officers. *Tom, supra*, 963 F.2d at 962. Further, in view of the mechanisms in place to investigate complaints, Vukadinovich has not shown that the City was deliberately indifferent to the constitutional rights of its citizens. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Vukadinovich also has not demonstrated that the City perfunctorily dismissed meritorious citizen complaints. *Bryant v. Whalen*, 759 F.Supp. 410, 412 (N.D.Ill.1991). We hold that the court properly directed a verdict for the City.

■ Eighth, Vukadinovich contends that the court erred in excluding pursuant to Fed. R.Evid. 403 complaints against the officers, newspaper articles, copies of actions against the City, and a copy of a departmental investigation report of Officer Zentz which occurred after the events here involved. A court's decision to exclude evidence under

Rule 403 is "generally accorded great deference because of [the court's] first-hand exposure to the evidence and [its] familiarity with the course of the trial proceedings". *United States v. Briscoe*, 896 F.2d 1476, 1498 (7th Cir.), *cert. denied*, 498 U.S. 863 (1990). Further, to be admissible, such evidence must pertain to events similar to the events in the instant case. *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir.1985). Here, the prior complaints arose from dissimilar events and were filed for a number of different reasons. We hold that the court did not abuse its discretion in excluding this evidence.

Ninth, Vukadinovich contends that the court erred in directing a verdict for appellees on his conspiracy claims. This contention also is without merit. To establish a conspiracy, Vukadinovich must have demonstrated an agreement *and* a deprivation of his constitutional rights. *Scherer v. Balkema*, 840 F.2d 437, 441–42 (7th Cir.), *cert. denied*, 486 U.S. 1043 (1988). Here, the jury found that the officers did not violate Vukadinovich's constitutional rights. Without such a violation, there can be no conspiratorial liability. We hold that the court properly directed a verdict on the conspiracy claims.

Tenth, Vukadinovich contends that the court erred in directing a verdict in favor of Officer Collins. This contention also is without merit. Collins's role was limited to signing and reviewing the arrest report compiled by Zentz regarding the November arrest. Merely signing the police report absent actual knowledge of what took place is insufficient to establish a connection between Collins and the alleged deprivation of Vukadinovich's constitutional rights. *Lee v. Town of Estes Park*, 820 F.2d 1112, 1116 & n. 3 (10th Cir.1987). We hold that the court properly directed a verdict in favor of Collins.

Eleventh, Vukadinovich contends that the court erred in dismissing his § 1983 and state law malicious prosecution claims. This contention also is without merit. At the jury instructions conference, Vukadinovich informed the court that his malicious prosecution claim was being asserted "per se" and was not based on his actions against Officer Collins. Standing alone, malicious prosecution is not actionable under § 1983. *Maho-*

*ney v. Kesery*, 976 F.2d 1054, 1060–61 (7th Cir.1992). Here, Vukadinovich's claim that his action was for malicious prosecution per se indicated that it stood alone. It is not actionable under § 1983. Further, Vukadinovich's state law malicious prosecution claim also was dismissed properly since appellees are immune under Indiana law. Ind.Code § 34–4–16.5–3(5) (1983).

Finally, Vukadinovich contends that the court erred in failing to give a more elaborate response to a question from the jury seeking clarification about the dates of certain photographs taken of Vukadinovich's injuries. We disagree. Since the jury was confused by certain facts and not by legal principles, the court did not abuse its discretion in simply referring to its prior instructions in answering the jury's question. *United States v. Aubin*, 961 F.2d 980, 983–84 (1st Cir.), *cert. denied*, 113 S.Ct. 248 (1992). Further, even if the court erred, Vukadinovich has failed to demonstrate that the court's response so prejudiced him as to constitute anything more than harmless error.

### III.

To summarize:

We hold that the court did not commit any reversible errors during Vukadinovich's trial. We affirm the judgment in all respects.

AFFIRMED.